1   PAUL L. REIN, ESQ. (State Bar No. 43053)
    AARON M. CLEFTON (SBN 318680)
2   REIN & CLEFTON, Attorneys at Law
    200 Lakeside Drive, Suite A
3   Oakland, CA  94612
    Telephone:(510) 832-5001
4   Facsimile: (510) 832-4787
    info@reincleftonlaw.com
5
    Attorneys for Plaintiff
6   ROOSEVELT JOHNSON

7                   UNITED STATES DISTRICT COURT

8                 NORTHERN DISTRICT OF CALIFORNIA

9

10  ROOSEVELT JOHNSON,                 Case No. 3:21-cv-00372-LB
                                       Civil Rights
11          Plaintiff,

            v.                         **DECLARATION OF PAUL L. REIN IN**
12                                     **SUPPORT OF PLAINTIFF'S MOTION FOR**
                                       **AN ORDER OF REASONABLE ATTORNEY**
13  HUNTERS POINT BREWERY, LLC dba     **FEES, LITIGATION EXPENSES AND**
    SPEAKEASY ALES & LAGERS;           **COSTS AGAINST DEFENDANTS**
14  ELMCO SALES, INC.
                                       Hearing
15          Defendants.                Date:       September 2, 2021
                                       Time:       9:30 AM
16                                      Location:   U.S. District Courthouse
                                                   450 Golden Gate Ave
17                                                  Courtroom C – 15th Floor
                                                   San Francisco, CA 94102
18                                     Judge:      Hon. Laurel Beeler

19

20

21

22

23

24

25

26

27

28

1    I, PAUL L. REIN, declare as follows:

2    1.      I have been an attorney of record for Plaintiff Roosevelt Johnson in this action and

3    have represented him since he first contacted me about access problems he encountered at the

4    Taproom at Speakeasy Ales & Lagers located at 1195 Evans Avenue, San Francisco, California.

5    2.      I am an attorney in good standing licensed to practice in the courts of California

6    and in the United States District Courts for the Northern, Eastern and Central Districts of

7    California, and the 9th Circuit Court of Appeals.  I have been a lawyer for 52 years, since

8    admission to the California Bar on January 9, 1969, after graduation from Boalt Hall, University

9    of California, Berkeley in June, 1968.  For the past 46 years, I have represented physically

10   disabled persons in civil rights disability access lawsuits.  This opportunity arose because

11   California first enacted laws protecting the civil rights of physically disabled persons in 1968,

12   whereas most states did not have similar access laws until passage of the Americans with

13   Disabilities Act of 1990 (the "ADA").  I filed my first disabled access lawsuit in Alameda County

14   Superior Court in 1975, *Keith Kellum v. Silver Dragon Restaurant*, which set a precedent for

15   using state law litigation to enforce statutes protecting the rights of disabled persons.  Although

16   the California state laws required access to commercial buildings constructed or altered since

17   1970, enforcement of these laws was routinely ignored by many building departments for many

18   years.  The Silver Dragon was constructed with stairs to the entrance and inaccessible restrooms.

19   3.      Since the passage of the ADA my law office has been dedicated to litigating

20   disability discrimination lawsuits under the ADA and under California law, mostly disability

21   access cases under Title II or Title III of the ADA, all actions which we believe to be in the public

22   interest.  Nearly all of our cases in the last 30 years have been filed in the federal courts for the

23   Northern, Eastern and Central Districts of California.

24   4.      I have employed at least a half dozen other attorneys who I have introduced to the

25   field of disability rights, each of whom later went on to establish their own disability rights law

26   firms, including Timothy Thimesch, Patricia Barbosa, Cat Cabalo, and Celia McGuinness.

27   5.      This case was filed to require Defendants to provide accessible public facilities

28   and cease discriminatory policies and actions toward disabled Plaintiff Roosevelt Johnson and

1   other mobility disabled persons.  Plaintiff filed this lawsuit to require Defendants to remove

2   physical barriers to full and equal access for himself and other disabled persons at this Speakeasy

3   Bar, and to obtain compensation for his discriminatory treatment and denial of accessible

4   facilities.  The original Complaint was filed January 14, 2021. Dkt. No. 1.

5   Description of My Work on This Case

6       6.   I have worked as counsel on this case since receiving the complaint from Plaintiff

7   Roosevelt Johnson, after his experience at the business.

8       7.   My time sheets, with all time entries recorded contemporaneously using the Time

9   Slips program, are attached hereto as **Exhibit 28**, and identify in detail the work I have done

10  through the filing of this attorney fees motion.  All work in this case was necessarily required to

11  achieve the objectives of this lawsuit: a Consent Decree by which Defendants must provide and

12  maintain specified access improvements, including a fully accessible unisex restroom, and pay

13  Plaintiff damages of $4,100.

14      8.   This work included but was not limited to addressing the following issues: initial

15  and continuing communications with the client; drafting the Complaint; communications and

16  strategy meetings with co-counsel Aaron Clefton; and multiple aspects of preparation for this

17  attorney fees motion, including research and work on reviewing drafts of this motion and

18  supporting declarations.

19      9.   I have specialized experience in representing disabled persons wishing to enforce

20  their civil rights for 46 years; in researching and writing multiple articles; in participating in

21  seminars intended to encourage other attorneys to represent disabled persons; in presenting

22  lectures to local, state and federal lawyer associations and groups; and in writing and publishing a

23  475-page comprehensive book which outlined California and 9th Circuit disability access law,

24  Full and Equal Access:  Disability Rights Litigation in California (Word Publishers, 2013).

25      10.  Aside from my personal work on the case, I assigned various tasks to our office

26  staff, senior paralegal Emily O'Donohoe (a former Illinois attorney) to advance the case, and

27  worked with my partner Aaron Clefton.  Both of them have filed individual declarations in

28  support of this motion.  As partners, Aaron Clefton and I are personally responsible for

1    everything done by our office, and personally advanced litigation expenses and costs, **totaling**

2    **$1,219**.  All of my work is on a "contingency risk basis" and no amount of any of our plaintiffs'

3    damages recoveries are ever taken for fees, costs, or litigation expenses.  Plaintiff in this case

4    recovered damages, in excess of the $1,000 statutory minimum per Cal. Civ. Code section 54.3

5    and the $4,000 statutory minimum under Cal. Civ. Code sections 51 and 52, which includes ADA

6    violations as violations of California law.

7         11.    I was involved in the initial client communications, complaint preparation, and

8    other phases of this case.  Injunctive relief is the only ADA Title III remedy, in addition to

9    allowing recovery of statutory attorney fees, litigation expenses and costs, to encourage attorneys

10   to take civil rights cases.  (See especially *Kittok v. Leslie's Poolmart, Inc.*, 687 F.Supp.2d 953

11   (C.D.Cal. 2009), and the court's discussion of the importance of ADA lawsuits at p. 959-961.)

12   Attorney fees and costs are available under state law, including liability for ADA violations

13   incorporated into California Civil Code §§ 51(f), 54(c) and 54.1(d).

14        12.    My total work on this case through the filing of the Motion for Attorney Fees,

15   Litigation Expenses, and Costs is 14.1 hours.  Rein & Clefton has also advanced $1,220 in out-of-

16   pocket litigation expenses and costs.

17   Hourly Rate

18        13.    I request approval of my hourly rate of $795/hr.  My current rate was approved in

19   the Northern District of California in 2018.  *See Martin et al. v. Diva Hospitality Group, Inc.,*

20   3:16-cv-04103-EDL, 2018 WL 6710705 (N.D. Cal. Dec. 7, 2018).

21        14.    This case was handled on a contingent fee risk basis, making it eligible for a

22   multiplier enhancement based on this factor alone.  *Greene v. Dillingham Construction N.A., Inc.*,

23   101 Cal. App. 4th 418 (2002).  However, as also noted by Judge Patel in *Blackwell v. Foley,*

24   believe my co-counsel and I have earned the right to be fully compensated at our lodestar rates for

25   all hours worked.  724 F. Supp. at 1085.  For example, the *Blackwell* Order (July 15, 2010) noted

26   that my then requested rate (for 2007-2009 work) was below the median market rate for attorneys

27   with my years of experience. *Id.* at 1084. This is still true today as many attorneys with similar

28   years of experience charge over $1,000/hr, more than my current rate of $795/hr.  The

1    reasonableness of my requested fee rate as well as the requested fee rates of the other billers in

2    this matter is supported by the March 27, 2017, Declaration of Richard M. Pearl in support of a

3    fee motion in the case of *Ridgeway et al. v. Wal-Mart Stores, Inc.* (N.D.Cal.) Case No. 3:08-cv-

4    05221 SI.  A true and correct copy of Mr. Pearl's Declaration is attached as **Exhibit 29.**

5           15.    I have participated in the preparation of this fee motion, this Declaration, and the

6    accompanying Points and Authorities.[1]  Records for all work done on this case (please see my

7    time sheets, **Exhibit 28**), were kept contemporaneously with the work performed, and are specific

8    as to the tasks done and the time expended to the nearest tenth (.1) of an hour.  These records

9    accurately reflect my time expended on this case.  My timekeeping methods have previously been

10   approved in orders by Northern District Judges, Henderson, Patel, Jenkins, Wilken, and Tigar,

11   and Magistrate Judges Larson, James, and Spero in contested-fee litigations.

12          16.    We are a small office in downtown Oakland and no outside source of funding.  Per

13   ADA § 12205, attorney fees are the incentive to attorneys to handle civil rights lawsuits resulting

14   in obtaining injunctive relief: access for disabled persons to previously <u>inaccessible</u> public

15   facilities.  We do not take any portion of our clients' damages recovery.  All recovery of fees

16   sought herein are sought in accordance with the standards reiterated by the California Supreme

17   Court in *Ketchum v. Moses,* 24 Cal.4th 1122 (2001).  This case has taken a significant amount of

18   my time and that of my co-counsel and staff ever since our office began work on this case.  (See

19   my time sheets, **Exhibit 28**, and those of my co-counsel and senior paralegal as attached to their

20   accompanying declarations.)  This is time that we could otherwise have spent making other public

21   facilities accessible.

22          17.    All attorneys' hours' records by Plaintiff's attorneys and paralegal were recorded

23   contemporaneously and to the tenth of an hour.  All of our work and expenditures of litigation

24   expenses and costs have been reasonably incurred and were necessary towards achieving the

25   specific objectives of this lawsuit.  Had we spent less time we would not have achieved the same

26

---

27   [1] In this fee motion's Memorandum of Points and Authorities I have quoted extensively from
     Judge Marilyn Hall Patel's Order in *Blackwell v. Foley*, 724 F.Supp.2d 1068 (N.D.Cal. 2010) - a
28   case and attorney fees motion handled by our office - as to a number of legal propositions.

1    results.

2    <u>Qualifications and Experience</u>

3          18.    I have represented physically disabled persons in civil rights cases for 46 of my 52

4    years as an attorney.  Martindale-Hubbell awarded me an "AV" rating and certification as having

5    the "Highest Possible Rating in Both Legal Ability and Ethical Standards."  I served as President

6    of the Alameda / Contra Costa Trial Lawyers Association (ACCTLA) for the year 2001 and have

7    been on its Board of Governors since 1975.  I was elected to the statewide Board of Governors of

8    the Consumer Attorneys of California (CAOC) from 2005-2008.  I graduated Phi Beta Kappa

9    from the University of California at Berkeley in 1965 (while also winning the Intercollegiate

10   Middleweight Boxing Championship in 1965).  I earned a 1968 law degree (J.D.) from Boalt Hall

11   School of Law, and represented Boalt Hall in the 1968 California State Moot Court

12   Championships, with teammate James Page, in brief writing and oral advocacy competition

13   against several other law schools; we won the Oral Advocacy competition and took second place

14   overall.

15         19.    Cases I have handled at trial and on appeal have set significant precedents in the

16   disabled access field.  For example, see *Donald v. Sacramento Valley Bank,* 209 Cal. App. 3d

17   1183 (1989); *Donald v. Café Royale*, 218 Cal. App. 3d 168 (1990); *Hankins v. El Torito,* 63 Cal.

18   App. 4th 510 (1998); *Walker v. Carnival Cruise Lines*, 63 F.Supp.2d 1083 (1999); *Walker v.

19   Carnival Cruise Lines,* 107 F.Supp.2d 1135 (N.D. Cal. 2000); *Blackwell v. Foley*, 724 F.Supp.2d

20   1068 (N.D.Cal. 2010).  In addition, I set some constitutional law precedents as a criminal defense

21   attorney from 1969 to 1975 prior to representing disabled persons.  In *Alford v. Superior Court*,

22   29 Cal.App.3d 725 (1972), which I handled through the trial court and set an important precedent

23   by writ, the Court held that the practice of allowing a police informant to <u>testify</u> without

24   providing his true identity violated a defendant's rights under the Sixth and Fourteenth

25   Amendments to confront witnesses against him.

26         20.    I was also initiating counsel and co-counsel in *Huezo v. Los Angeles Comm.

27   College Dist.,* which recovered more than one million dollars in damages and attorney fees and a

28   published permanent injunction order to provide major access at Pierce College following heavily

1   contested litigation. 672 F.Supp.2d 1045 (2008).

2        21.    I initiated and co-counseled several class-action cases with attorneys Sid Wolinsky

3   and the late Larry Paradis, both of Disability Rights Advocates.  Two of these actions resulted in

4   access improvements in approximately 1400 Jack in the Box restaurants and more than 230

5   Denny's restaurants.

6        22.    I have published numerous "disabled access" articles encouraging other lawyers

7   to handle public interest disability rights cases, including the pioneer article "Wheelchair Access

8   Litigation," more than 35 years ago in the CTLA <u>Forum</u> Magazine (June 1982, Vol. XII, No. 5);

9   "Public Interest Law and Attorneys' Fees," CTLA <u>Forum</u> Magazine (May 1989); "Enforcing

10  Disabled Access Through Private Lawsuits" (Fall 1996, <u>The Verdict</u>); "Enforcing Disabled

11  Access Through Private Lawsuits: Public Interest Work and Attorney's Fees" (December 1996)

12  CAOC <u>Forum</u> Magazine, as well as preparing syllabus materials for multiple CAOC seminars in

13  California and Hawaii.  I have lectured to multiple attorney groups and law school seminars,

14  including Boalt Hall, ACCTLA, DREDF, Consumer Attorneys of California (CAOC) and

15  "ATLA" (formerly Association of Trial Lawyers of America, now changed to "AAJ," American

16  Association for Justice) seminars for attorneys and law students.  My work was recognized in the

17  January 1998 <u>California Lawyer</u> magazine article "Fighting for Equal Access," republished in the

18  Spring 1998 <u>Verdict</u> magazine of the ACCTLA.  In 2005 I co-founded and was selected for the

19  Board of Directors for the "Civil Rights Section" of ATLA (now AAJ), and served several years

20  in that section.  I have always encouraged attorneys to take cases to protect civil rights and the

21  rights of disabled persons and shared my experiences and my work with others.

22       23.    I have authored and published a leading text on disability access law and litigation,

23  <u>Full and Equal Access: Disabled Rights Litigation in California</u> (Word Association Publishers,

24  2013), a 475 page book outlining California and Ninth Circuit statutory, regulatory and case law

25  in this area of practice.  This book was edited by my co-counsel, Aaron Clefton.

26       24.    Attorney's fees for disabled access cases handled on a contingency basis are not

27  guaranteed.  They represent a real risk to our practice.  Sometimes my office has pursued public

28  interest results for many years only to receive little or no attorney fees in the end.  For example,

1    after an 8-day jury trial in *Zum Brunnen v. Mission Ranch*, Case No. C97-20668 JW (N.D. Cal.),

2    although the jury found multiple access violations, it refused to award any "actual" damages

3    against defendant Clint Eastwood, the owner of the Mission Ranch resort.  The Court, which

4    acknowledged that our lawsuit had caused the removal of barriers, also declined to award even

5    statutory minimum damages, or <u>any</u> attorney fees, litigation expenses or costs.  Our office and co-

6    counsel John Burris lost over $800,000 in accrued attorney fees, litigation expenses and costs,

7    after 5 years of intense litigation.  We received a very small recovery by settlement during our

8    appeal.

9         25.    For another example, *George v. BART*, Case No. C00-02206 CW (N.D. Cal.), was

10   a suit we filed on behalf of several visually disabled persons who fell down stairs at BART's "key

11   stations" because BART refused to paint contrasting stripes at the top of the stairs.  We *twice* won

12   summary judgments for plaintiffs and were "awarded" substantial fees and costs by Judge

13   Claudia Wilken, only to have a 9th Circuit panel twice reverse the trial court, on the grounds that a

14   "safe harbor" provision under the ADA was <u>not</u> "unconstitutional," as held by the trial court.  The

15   "Bush" Department of Justice assisted Defendant BART with filing approximately 20 *amicus*

16   briefs by cities <u>supporting</u> BART's position that the "safe harbor" provision was constitutional.

17   *See George v. BART*, 577 F.3d 1005 (9th Cir. 2009).  After the second remand (because the 9th

18   Circuit allowed plaintiff to continue the action solely on state law grounds), we settled (at a court

19   supervised settlement conference) for an agreement by BART to provide <u>all injunctive relief</u>

20   <u>requested</u> and pay our disabled clients a total of $35,000 stipulated damages, but only $100,000

21   (approximately 1/8) of our accrued $800,000 fees, litigation expenses and costs, paid after nine of

22   years litigation.

23        26.    Disabled access cases are also often risky due to problems of collection of court

24   awards and/or settlement amounts, particularly during the pandemic.  Often, we do significant

25   unremunerated work to collect our settlement awards.  For example, in *Edward Forbes and*

26   *Matthew Forbes, minors, by Jennifer Forbes as their Guardian Ad Litem v. Dr. Chester Hsu dba*

27   *Silver Star Dental Practice; Ronald Myers; Caroline Myers*, Case No. 2:07-CV-01371 MCE

28   (E.D. Cal.), the property owner defendants (the Myers) declared bankruptcy, putting at risk

1    plaintiff's recovery of damages and attorney fees.  Per settlement, plaintiffs' counsel we received

2    less than 50% of our fees and costs incurred in that case.

3          27.    Rein & Clefton is a small law firm which represents disabled plaintiffs in cases

4    involving discrimination against disabled persons due to barriers to access, whether policy or

5    architectural, at public accommodations.  As a small firm, Rein & Clefton must limit the number

6    of cases it chooses to file at a given time.  The firm generally only files about 20 – 25 cases each

7    year so that the necessary attention may be paid to each matter. Rein & Clefton is not an ADA

8    "mill."  Despite the relatively small number of cases Rein & Clefton files, it receives many calls

9    with requests for assistance from disabled persons every year.   Rein & Clefton is unable to

10    attempts to choose the cases which will have the greatest public interest impact, as in this case,

11    where essential restroom access is missing.  Our office attempts to file cases against public

12    accommodations where many disabled persons are likely to visit and thus be impacted.  When it

13    decides to take a case, Rein & Clefton must necessarily decline other cases.  Therefore, we were

14    precluded from other employment when we agreed to file this action.

15          I declare the above statement to be true and correct to the best of my knowledge and so

16    declare under penalty of perjury, and under the law of the State of California, on July 23, 2021, in

17    the City of Oakland, California.

18

19                    ___*/s/ Paul L. Rein*_____

                         PAUL L. REIN

20                      Attorneys for Plaintiff

                         ROOSEVELT JOHNSON

21

22

23

24

25

26

27

28