United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| ROOSEVELT JOHNSON, | Case No. 21-cv-00372-LB |
| Plaintiff, | |
| v. | **ORDER ON MOTION FOR ATTORNEY'S FEES AND COSTS** |
| HUNTERS POINT BREWERY, LLC, et al., | Re: ECF No. 19 |
| Defendants. | |

## INTRODUCTION

Counsel for the plaintiff investigated and litigated a claim for violations of the Americans with Disabilities Act of 1990 (ADA) and California state law.[1] Now that the parties have entered, and the court has adopted, a consent decree as to injunctive relief and damages,[2] the plaintiff's attorneys filed a Motion for Reasonable Attorneys' Fees, Litigation Expenses, and Costs.[3] The plaintiff seeks $22,470 in fees and $1,219 in costs and litigation expenses,[4] while the defendants

---

[1] Compl. – ECF No. 1 (the Unruh Act, Civil Code Section 51 and 52, and the Americans with Disabilities Act as incorporated by Civil Code Section 51(f)). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Order – ECF No. 18.

[3] Mot. for Att'y Fees – ECF No. 19 at and 27.

[4] Reply – ECF No. 29 at 20.

United States District Court
Northern District of California

1  oppose the fees as unreasonable on the grounds that (i) the hourly rate should be reduced due to

2  the straightforward nature of the case, and (ii) the billing was excessive, unnecessary and

3  redundant.[5] Additionally, they object to the plaintiff's estimate of costs of legal research as the

4  defendants admitted to liability in their answer and did not dispute their liability.[6] The defendants

5  argue the plaintiff's attorneys are entitled to no more than $4,740 in fees and $709.57 in costs and

6  expenses.[7] The court can decide the motion without oral argument. N.D. Cal. Civ. L. R. 7-1(b).

7  The court awards $13,500 in fees and $709.35 in costs.

8

9                                    **STATEMENT**

10      Plaintiff Roosevelt Johnson requires a wheelchair to get around due to his disability resulting

11  from quadriplegia.[8] On February 16, 2020, the plaintiff visited the Taproom at Speakeasy Ales &

12  Lagers and attempted to use the restroom.[9] The plaintiff found the restroom inaccessible due to the

13  size of the toilet stall and lack of compliant grab bars, which subjected him to discomfort and

14  embarrassment.[10]

15      The plaintiff filed the complaint against Hunters Point Brewery, LLC (dba Speakeasy Ales &

16  Lagers), and the landlord, Elmco Sales, Inc. (collectively "defendants"), on January 14, 2021.[11]

17  Both parties consented to the court's jurisdiction[12] and continued the deadline for the defendants to

18  answer the complaint.[13] During the continuance, the defendants hired a CASp architect familiar to

19  the plaintiff's attorneys, Gary Waters, to perform an access survey of the grounds.[14] That survey

20

21  [5] Opp'n – ECF No. 28 at 4.

22  [6] *Id.* at 8.

23  [7] *Id.* at 9.

    [8] Compl. – ECF No. 1 at ¶ 1.
24
    [9] *Id.* at ¶ 13.
25
    [10] *Id.* at ¶ 15.
26
    [11] *Id.*

27  [12] Consent – ECF Nos. 6 and 14.

    [13] Stipulations – ECF Nos. 10 and 11.
28
    [14] Clefton Decl. at ¶ 14, Ex. 5 – ECF No. 20-5.

was performed on February 3, 2021.[15] Mr. Waters filed a report on March 30, 2021, and recommended an accessible unisex restroom be installed.[16] The defendants answered the complaint on May 7, 2021.[17]

On June 14, 2021, the parties submitted a Stipulation with Proposed Order Consent Decree as to Injunctive Relief and Damages Only, which the court adopted.[18] In the Order, the parties agreed that the remedial work recommended by Mr. Waters in the CASp report would be completed by October 15, 2021.[19] No discovery was necessary, and the plaintiffs did not go on a site visit. Defendants also agreed to pay a damages award of $4,100, and the plaintiff's reasonable attorney's fees, litigation expenses, and costs as determined by the court.[20]

The plaintiff filed their motion for attorney's fees on July 26, 2021, wherein they explained the basis for estimating each attorney's rates.[21] Paul Rein, the most experienced of the plaintiff's attorneys, has been representing disabled persons since 1975, litigated at the trial and appellate level, and published a book in the area of disability access.[22] Aaron Clefton, the Managing Partner of Rein & Clefton, has worked exclusively in disability-access and discrimination cases as both a paralegal and attorney for 16 years.[23] Emily O'Donohoe, J.D., works as a senior paralegal with Mr. Rein and Mr. Clefton, and has worked in disability related fields of law for the past nine years.[24] The plaintiffs request hourly rates of $795 for Mr. Rein, $375 for Mr. Clefton, and $225 for Ms. O'Donohoe.[25]

---

[15] *Id.*

[16] Stipulation – ECF No. 17 at 12 and 14.

[17] Answer – ECF No. 12.

[18] Stipulation – ECF Nos. 17 and 18.

[19] Stipulation – ECF No. 18 at 3 and 11–40.

[20] *Id.* at ¶¶ 8, 9.

[21] Mot. – ECF No. 19.

[22] *Id.* at 17–19.

[23] *Id.*

[24] *Id.* at 22.

[25] *Id.* at 17.

1       The plaintiff's counsel billed a total of 81.2 hours while representing Mr. Johnson.[26] Mr. Rein

2   billed $11,210 by billing 14.1 total hours (most dedicated to "Co-Counsel Discussions," "Attorney

3   Fees Motion," and "Pleadings (Complaint etc.)"),[27] while Mr. Clefton billed $11,025 over 29.4

4   hours (mostly to the "Attorney Fees Motion," "Co-Counsel Discussions, and "Fact

5   Investigation/Developments").[28] Ms. O'Donohoe billed $8,482 over 37.7 hours, the majority of

6   which (21.4 hours) were spent on this motion for attorney fees with a combined 13 hours split

7   amongst "Analysis/Strategy/Research," "Co-Counsel Discussions," and "Pleadings (Complaint

8   etc.)."[29] In total, the plaintiff's attorney's fees are $22,819, but the plaintiff's counsel request only

9   $15,000 in fees due to the current conditions resulting from the COVID-19 pandemic.[30] The

10  plaintiff's counsel also request $4,815 in reasonable fees for Ms. O'Donohoe as a paralegal.[31]

11      In addition to fees, the plaintiff's attorneys request $1,219 in expenses and costs.[32] That

12  number includes $402.00 for filing the complaint, $205.00 for serving the complaint on Elmco

13  Sales, $102.35 for serving the complaint on Hunters Point Brewery, and $510.43 for the costs of

14  legal research.[33]

15      In their opposition, the defendants argue for several reductions. First, they argue that this case

16  was routine and non-complex enough that the court should lower Mr. Clefton's rate from $375 an

17  hour for all tasks to $300 an hour for legal work and $200 an hour for simple tasks that "could

18  have been performed by a junior attorney.[34] Second, and confusingly as the plaintiffs set Ms.

19  O'Donoghue's hourly rate at $225, the defendants argue Ms. O'Donoghue's rate should be

20

21  ---------------------------------------

    [26] *Id.* at 25.

22  [27] *Id.*; ECF No. 21-1.

23  [28] *Id.*; ECF No. 20-1.

24  [29] *Id.*; ECF No. 22-1.

    [30] Mot. – ECF No. 19 at 28.

25  [31] *Id.*

26  [32] Clefton Decl. – ECF No. 20-26 at 1.

    [33] *Id.*

27  [34] Opp'n – ECF 28 at 4–5 (citing *Johnson v. Edward K. Li*, 5:19-cv-8075 (ECF No. 29) (N.D. Cal.
    June 17, 2020) (hereinafter, "*Li*")). The Westlaw citation is No. 5:19-cv-08075-EJD, 2020 WL
28  3268850 (N.D. Cal. June 17, 2020), *aff'd*, 848 F. App'x 744 (2021).

United States District Court
Northern District of California

reduced to $200 and "be no more than . . . $250."[35] Third, the defendants object to a list of time entries from Mr. Clefton's Timesheet[36] as either excessive, unnecessary or redundant.[37] The defendants make no objection against the hourly reports of either Mr. Rein or Ms. O'Donohue. Lastly, the defendants object to the $510.43 cost of legal research and claim "none was needed given the fact that Defendants admitted to liability in their response and Speakeasy agreed to follow his CASp Gary Water's recommendation."[38] In their conclusion, the defendants claim the plaintiff's counsel "should receive no more than $4,740.00 in attorneys' fees and their requested costs less $510.43."[39]

The plaintiff's counsel filed their reply on August 13, 2021,[40] wherein the estimates of hours billed and total fees billed by attorneys increased by 18.3 hours and total fees of $6,862.50 for Mr. Clefton[41] and 11.8 hours for $2,655.00 in fees for Ms. O'Donohoe.[42] Both kept their prior-stated hourly rates. With these additional fees on fees, the plaintiff's counsel ultimately request $22,470 in fees and $1,219 in costs for a total award of $23,689.[43]

## LEGAL STANDARD

Under the court-ordered consent decree, the plaintiff is a "prevailing party" entitled to reasonable attorney's fees, litigation expenses and costs.[44] The analysis of a reasonable fee award begins with the lodestar, which the court calculates by multiplying a reasonable hourly rate by the number of hours reasonably spent by counsel. *Hensley v. Eckhart*, 461 U.S. 424, 433 (1983);

---

[35] *Id.* at 5 (citing *Li*).

[36] Clefton Decl. – ECF No. 20-1.

[37] Opp'n – ECF No. 28 at 5–8.

[38] *Id.* at 8.

[39] *Id.* at 9.

[40] Reply – ECF No. 29.

[41] Clefton Decl. – ECF No. 30-1.

[42] O'Donohoe Decl. – ECF No. 31-1.

[43] Reply – ECF No. 29 at 20.

[44] Stipulation – ECF No. 17 at 5; *see also Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 603–04 (2001).

1  *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996); *Lealao v. Beneficial Cal., Inc.*, 82

2  Cal. App. 4th 19, 26 (2000). As the plaintiff brought causes of action under both federal and

3  California state law, the analyses for a reasonable fee under both doctrines is applied.

4  When federal statutes authorize attorney's fees, courts apply a two-step process to calculate the

5  fee award. *See Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000).

6  First, the court calculates the presumptive lodestar award. *Grove v. Wells Fargo Fin. Cal.,*

7  *Inc.*, 606 F.3d 577, 582 (9th Cir. 2010).

8  Second, "in appropriate cases, the district court may adjust the 'presumptively reasonable'

9  lodestar figure based upon the factors listed in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69–

10  70 (9th Cir. 1975) . . . that have not been subsumed in the lodestar calculation." *Intel Corp. v.*

11  *Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993). The *Kerr* factors are "(1) the time and labor

12  required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform

13  the legal service properly, (4) the preclusion of other employment by the attorney due to

14  acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time

15  limitations imposed by the client or the circumstances, (8) the amount involved and the results

16  obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the

17  case, (11) the nature and length of the professional relationship with the client, and (12) awards in

18  similar cases." *Kerr*, 526 F.2d at 70. "The lodestar amount presumably reflects the novelty and

19  complexity of the issues, the special skill and experience of counsel, the quality of representation,

20  and the results obtained from the litigation." *Intel Corp.*, 6 F.3d at 622; *see also Perdue v. Kenny*

21  *A.*, 559 U.S. 542, 553 (2010) (noting that the lodestar figure includes "most, if not all, of the

22  relevant factors constituting a 'reasonable' attorney's fee"). Thus, in appropriate cases, the court

23  may examine the remaining factors to determine whether an enhancement or a decrease in the

24  lodestar figure is warranted. *Clark v. City of Los Angeles*, 803 F.2d 987, 991 (9th Cir. 1986).

25  Nonetheless, there is a strong presumption that the lodestar figure represents a reasonable fee and

26  any upward or downward adjustment of that figure is proper only in "rare and exceptional cases."

27  *Van Gerwen v. Guar. Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (internal quotations

28  omitted).

United States District Court
Northern District of California

1    Under California law, the court also begins with the lodestar: the number of hours reasonably

2    expended multiplied by the reasonable hourly rate. *Chavez v. City of Los Angeles*, 47 Cal. 4th 970,

3    985 (2010); *Ctr. for Biological Diversity v. Cnty. of San Bernardino*, 185 Cal. App. 4th 866, 895–

4    96 (2010). "[T]he lodestar is the basic fee for comparable legal services in the community," and

5    the court may adjust it based on several factors. *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001)

6    (citing *Serrano v. Priest*, 20 Cal. 3d 25, 49 (1977)). "The purpose of such adjustment is to fix a fee

7    at the fair market value for the particular action. In effect, the court determines, retrospectively,

8    whether the litigation involved a contingent risk or required extraordinary legal skill justifying

9    augmentation of the unadorned lodestar in order to approximate the fair market value for such

10   services." *Id.* (citing *Serrano*, 20 Cal. 3d at 49). To determine whether a multiplier should be

11   applied, the court considers the following factors: (1) the novelty or difficulty of the questions

12   involved; (2) the expertise and capability of counsel; (3) the results obtained; (4) the contingent

13   risk involved in the case; (5) the extent to which the nature of the litigation precluded other

14   employment by the attorneys; and (6) whether the attorneys received public and/or charitable

15   funding. *Serrano*, 20 Cal. 3d at 48–49. Unlike federal law, California law authorizes the court to

16   apply a multiplier to the lodestar figure to adjust for contingency risk. *Id.*

17

18                                          **ANALYSIS**

19   The plaintiff asks for $22,470 in fees and $1,219 in litigation expenses and costs, for a total

20   award of $23,689.[45] The defendants challenge the hourly rates, the total of reasonable hours spent,

21   and $510.43 of the reported costs that were spent on legal research. Summarily, they believe the

22   plaintiff should receive no more than $4,470.00 in fees and $708.57 in costs and expenses. The

23   court reduces the hourly rate of Ms. O'Donohoe, reduces the hours spent by all of the plaintiff's

24   representatives, does not add a multiplier, and awards $13,500.00 in fees and $708.57 in costs and

25   expenses.

26

27

28   _____

[45] Reply – ECF No. 29 at 20.

1

### 1.1   Hourly Rates

2

3        The first question is whether the hourly rates presented by the plaintiffs are in fact reasonable.

4    In calculating the lodestar figure, the district court must determine a reasonable hourly rate based

5    on the experience, skill, and reputation of the attorneys requesting fees. *Chalmers v. City of Los*

6    *Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). As the Supreme Court has recognized, determining

7    a reasonable or prevailing rate of compensation is "inherently difficult." *Blum v. Stenson*, 465 U.S.

8    886, 895 n.11 (1984); *see also Ghadiri v. Carpet & Linoleum City*, No. 18-cv-1869, 2019 WL

9    7841075, (N.D. Cal. Nov. 12, 2019) ("The essential goal in shifting fees . . . is to do rough justice,

10   not to achieve auditing perfection."). To determine the reasonable hourly rate, the court does not

11   refer to the rates counsel actually charged the prevailing party, but rather looks to the rate

12   prevailing in the community for similar work performed by attorneys of comparable skill,

13   experience, and reputation. *Chalmers*, 796 F.3d at 1210–11. The fee applicant is assigned the

14   burden "to produce satisfactory evidence — in addition to the attorney's own affidavits — that the

15   requested rates are in line with those in the community." *Blum*, 465 U.S. at 895 n.11; *see also*

16   *Widrig v. Apfel*, 140 F.3d 1207, 1209 (9th Cir. 1998) (declarations of attorneys regarding the

17   prevailing market rate in the community may be sufficient to establish reasonable hourly rate).

17       While the opposing party has a burden to challenge the motion, the Ninth Circuit has

18   explained that "district courts have a *duty* to ensure that claims for attorneys' fees are reasonable,

19   and a district court does not discharge that duty simply by taking at face value the word of the

20   prevailing party's lawyer for the numbers of hours expended on the case. Rather, a district court

21   must ensure that the winning attorneys have exercised billing judgment." *Vogel*, 893 F.3d at 1160

22   (cleaned up).

23       ### 1.1.1   Mr. Rein

24       Mr. Rein is an extremely experienced advocate for the rights of people living with disabilities.

25   He is a named partner at his firm and has the respect of lawyers in his community.[46] He has

26   successfully represented many clients during his long career, his requested rate of $795 per hour is

27

28   ───────────────

     [46] Rein Decl. – ECF No. 21-2.

United States District Court
Northern District of California

1    justified and has been accepted in this district. *Martin v. Diva Hosp. Grp., Inc.*, No. 16-cv-4103,

2    2018 WL 6710705, at *2 (N.D. Cal. Dec. 7, 2018). The court approves Mr. Rein's requested rate

3    of $795.

### 1.1.2    Mr. Clefton

5        Mr. Clefton requests an hourly rate of $375. In a testament of his experience, he declares that

6    he has worked in disability rights cases since July 2005, and in 2017 opened the law practice Rein

7    & Clefton as its managing partner.[47] Declarations by those with personal experience working with

8    and supervising Mr. Clefton support that he is an attorney of significant experience, skill, and

9    reputation in the field.[48]

10       Defendants oppose the $375 per hour rate on two grounds. First, they believe Mr. Clefton is

11   not experienced enough to justify a $375 an hour rate, and second, they argue Mr. Clefton should

12   be assigned a rate of $300 an hour "for reasonable and necessary legal work," but $200 an hour or

13   less "for simple boiler plate tasks that could have been performed by a junior attorney."[49] The

14   latter grounds include arguments that Mr. Clefton spent time on work that should have been

15   delegated to a less expensive co-worker, which is best handled in a later section regarding whether

16   the total hours billed was reasonable.

17       The defendants rely on *Li* where the district court assigned newer attorney, Josie Zimmerman,

18   a $250 hourly rate. 2020 WL 3268580, at *4. In that case, Ms. Zimmerman asked for a $400

19   hourly rate but the court reduced it to $250 as she (i) graduated law school less than two years

20   before taking on the case, (ii) was supervised by three more senior attorneys, and (iii) had a

21   minimal role on the case as she joined the firm three months after the complaint was filed and a

22   month before judgment was entered. *Id.*, at *4 (reducing the rate "in light of the fact that she is

23   newly barred and *just* joined the CDA Law Firm"). On the other hand, Mr. Clefton graduated law

24   school four years before initiating this case and has been working in disability rights cases as a

---

26   [47] Clefton Decl. – ECF No. 20 at ¶¶ 6 and 7.

27   [48] Prachovnick Decl. – ECF No. 20-23 at ¶¶ 8–12; Cabalo Decl. – ECF No. 20-24 at ¶¶ 5–9; Yu Decl.
     – ECF No. 20-25 at ¶¶ 3–6.

28   [49] Opp'n – ECF No. 28 at 4.

United States District Court
Northern District of California

1  paralegal and a lawyer for the past 16 years. This district has accepted his experience as justifying

2  a $375 rate in the past (*Martin v. Diva Hosp. Grp., Inc.*, No. 16-cv-04103-EDL, 2018 WL

3  6710705, at *2 (N.D. Cal. Dec. 7, 2018) (assigning Mr. Clefton a $375 an hour rate when he was

4  sworn into the bar)), and the defendants bring no compelling reason to diminish Mr. Clefton's rate

5  now. The court will apply an hourly rate of $375.

6      **1.1.3   Ms. O'Donohoe**

7      Plaintiff requests $225 for Ms. O'Donohoe, and the defendants argue the rate should be

8  reduced to $200.[50] Defendants offer no explanation why $200 is a reasonable rate for Ms.

9  O'Donohoe, but they do cite again to *Li* where Ms. Zimmerman received $250 and argue Ms.

10  O'Donohoe should receive a rate "no more than a newer attorney." Ms. O'Donohoe has submitted

11  affidavits affirming her good reputation from those who work with her.[51] Around the district, $120

12  is an accepted rate for paralegals. *Whitaker v. Lucky Opco LLC*, No. 21-CV-01478-CRB, 2021

13  WL 3427115, at *5 (N.D. Cal. Aug. 5, 2021) (assigning $100 an hour for paralegals involved in

14  disability access litigation); *Johnson v. Nuoc Mia Vien Dong 2, LLC*, No. 21-cv-1618, 2021 WL

15  3271232, (N.D. Cal. July 30, 2021) ("[C]ourts in the Northern District of California have recently

16  found an hourly rate of $100 reasonable for paralegals and legal assistants" in this area of law);

17  *Hernandez v. Lucky Fortune, Inc.*, No. 16-CV-01775-JCS, 2018 WL 317841, at *3 (N.D. Cal. Jan.

18  8, 2018) (assigning a rate of $155 per hour for a paralegal with eight years of experience as a

19  paralegal). Considering Ms. O'Donohoe's experience in disability-access litigation and her law

20  degree, the court finds a rate of $200 to be appropriate.

21  **1.2    Number of Hours**

22      Having determined the reasonable hourly rate to be applied, the court proceeds to determine

23  the number of hours reasonably expended on the litigation. *Morales*, 96 F.3d at 363. The Court

24  "may not attempt to impose its own judgment regarding the best way to operate a law firm, nor to

25  determine if different staffing decisions might have led to different fee requests." *Moreno v. City*

26

27  ─────────────
    [50] *Id.* At 5.

28  [51] Atwood Decl. – ECF No. 23; McGuinness Decl. – ECF No. 24.

United States District Court
Northern District of California

*of Sacramento*, 534 F.3d 1106, 1115 (9th Cir. 2008). Again, defendants have raised their arguments, and the court, as it must, will conduct an "independent review of the fee application." *McGrath v. Cty. Of Nevada*, 67 F.3d 248, 254 n.5 (9th Cir. 1995).

The defendant contends, and the court finds, that the plaintiff spent hours that were unreasonable.

First, the plaintiffs spent an unreasonable amount of time drafting a boilerplate complaint. Much of the complaint is an exact match, other than the facts, to other complaints filed by Mr. Clefton in this district. *See Arthur Renowitzky v. Driscoll's Valencia St. Serra Mortuary,* No. 3:21-cv-2645 (ECF No. 1) (N.D. Cal. Apr. 13, 2021); *Deras-Nava v. Belmont Pet Hosp., Inc.*, No. 3:19-cv-1620 (N.D. Cal. Mar. 28, 2019); *Hernandez v. Sakura Teppanyaki & Sushi, LLC*, No. 3:18-cv-63 (ECF No. 1) (N.D. Cal. Jan. 4, 2018). Across the district, most courts expect a complaint of this type to be written in about five hours. *Jagdeep S. Bidwal v. Unifund CCR Partners*, No. 3:17-cv-2699 (ECF No. 138 at 22) (N.D. Cal. Aug. 27, 2019); *see also Abad v. Williams, Cohen & Gray, Inc.*, No. 06-cv-2550 SBA (JCS), 2007 WL 1839910 (N.D. Cal. Apr. 23, 2007) (finding four hours to draft a complaint excessive). Nevertheless, before the complaint was filed, the plaintiff's attorneys billed a total of 22.6 hours (Mr. Clefton billed 7.3 hours, Mr. Rein billed 5.8 hours, and Ms. O'Donohoe billed 9.5 hours). This is an unreasonable amount to bill so early in a garden-variety disability-access case.

Second, the defendants argue "[the] hours on and between 1/19/21 to 2/19/21 should not be compensated."[52] Once the complaint was filed, the plaintiffs only had to wait. They had no contact with the defendants until February 16, 2021, when the defendants asked for a continuance that the plaintiffs quickly agreed to.[53] The defendants independently and promptly hired an outside expert and adopted his report without enlisting the plaintiff's resources. And in the meantime, Mr. Clefton held seven meetings in sub 0.3-hour increments to "discuss next steps in case." With a lull in the litigation, and his experience to bear, Mr. Clefton should have spent less time in these

---

[52] Opp'n – ECF No. 28 at 7.

[53] Clefton Decl. – ECF No. 20-4 at 4.

United States District Court
Northern District of California

meetings.[54] Mr. Rein has even more experience and should have delegated away more of the case monitoring and management of such a simple case. Instead, he billed $954.00 in that time — $715.50 of which was spent on 0.1- and 0.2-hour increments discussing the "progress of the case," "case status," or "case status updates."[55] Ms. Donohoe also had multiple expenses to meetings to "discuss progress of case" for 0.1 and 0.2 entries.[56]

Courts in this district have previously reduced hours that were attributed to "time co-counsel spent conferring with each other." *Martin*, 2018 WL 6710705, at *1; *see also Gonzalez v. Machado*, No. 17-cv-2203, 2019 WL 3017647, at *6 ("[B]illing 0.1 hours for certain practices sometimes requires a reduction.").

Separately, this case was not complicated. The defendants independently procured a site survey by an expert, adopted his recommendations, and answered the complaint, and the case reached a settlement without ADR or a supervised negotiation. As the defendants point out, there was no joint site survey, no motions, no discovery, and no mediation. The only work that took place after filing the complaint consisted of emails and phone calls negotiating the settlement.[57] While the plaintiff's attorneys attached over a hundred pages of email communications,[58] it does not justify the attorneys billing more while in litigation ($11,505.00 in billings between January 14, 2021, and June 14, 2021) than they billed researching, drafting, and filing the complaint ($9,121.50 in billings before January 14, 2021).

Third, the court does not award fees on fees. *Heifetz v. Mona's Burgers Clayton LLC*, No. 19-cv-02392-LB, 2921 WL 292034, at *6 (N.D. Cal. Jan. 18, 2021). While Mr. Rein and Mr. Clefton waived their fees for time spent on the fee motion and reply,[59] the court also does not consider time spent by Ms. O'Donohoe on the fee motion to be reasonable. After the court approved the

---

[54] Clefton Decl. – ECF No. 20-1.

[55] Rein Decl. – ECF No. 21-1.

[56] O'Donohoe Decl. – ECF No. 22-1.

[57] Opp'n – ECF 28 at 6.

[58] Clefton Decl. – ECF 20, Exs. 4–20 (most of it repetitive).

[59] Reply – ECF No. 29 at 20.

1    stipulation and consent decree on June 14, and after the motion was filed, the additional billed

2    time was not reasonable.

3         Based on the above, and a review of all billing records, the court takes the total requested by

4    the plaintiffs in their July 26, 2021, motion for fees for the underlying case only ($15,000.00) and,

5    upon finding that unnecessary and excessive time was billed to a garden-variety complaint and

6    when there was no work to do on a simple case, applies a 10% reduction. The court awards fees in

7    the amount of $13,500.00. The court further concludes that there are no *Kerr* factors that would

8    warrant an upward or downward adjustment of the lodestar amount.

9    ### 1.3    The Costs and Expenses

10        The plaintiff reports costs and expenses totaling $1,219.78.[60] That is broken into the $402.00

11   fee for filing the complaint, the $205.00 fee for serving the complaint on Elmco Sales, the $102.35

12   fee for serving the complaint on Hunter's Point Brewery, LLC, and $510.43 for "legal research."

13   Defendants object to the legal-research cost. The plaintiffs offer no support, and the court knows

14   of no legal precedent, for awarding the cost of legal research. The court awards the costs and

15   expenses requested less the legal research amount, for a total of $709.35.

16

17                                    CONCLUSION

18        Based on the above, the court awards $14,209.35 as reasonable lodestar fees, costs, and

19   expenses.

20

21        **IT IS SO ORDERED.**

22        Dated: August 31, 2021                        _____

23                                                      LAUREL BEELER
                                                        United States Magistrate Judge
24

25

26

27

28   ---
     [60] Clefton Decl. – ECF No. 20-26.

United States District Court
Northern District of California